IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOTIVATION INNOVATIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.  11-615-SLR |
| | ) | |
| ULTA SALON COSMETICS & | ) | |
| FRAGRANCE INC., | ) | |
| | ) | |
| Defendant. | ) | |

Steven J. Balick, Esquire, Tiffany Geyer Lydon, Esquire, and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware.  Counsel for Plaintiff.  Of counsel: Gregory P. Casimer, Esquire, A. Justin Poplin, Esquire, and Hissan Anis, Esquire of Lathrop & Gage LLP.

Jack B. Blumenfeld, Esquire, Julia Heaney, Esquire, and Paul Saindon, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: July 22, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 12, 2011, plaintiff Motivation Innovations, LLC ("plaintiff") filed a

complaint alleging patent infringement against defendant Ulta Salon, Cosmetics &

Fragrance, Inc. ("defendant") alleging infringement of U.S. Patent No. 5,612,527 ("the

'527 patent").[1]  (D.I. 1)  Defendant's motion to dismiss the complaint was denied and

plaintiff's request to amend was granted on May 17, 2012.  (D.I. 16; D.I. 32)  Plaintiff

filed an amended complaint on May 16, 2012, which defendant answered on June 4,

2012, asserting affirmative defenses and counterclaims of invalidity and non-

infringement.  (D.I. 31; D.I. 41)  Plaintiff answered the counterclaims on June 20, 2012.

(D.I. 48)

Plaintiff is a Delaware corporation with a principal place of business in Boca

Raton, Florida.  (D.I. 32 at ¶ 2)  Defendant is a company organized and existing under

the laws of the State of Delaware and with a principal place of business in Bolingbrook,

Illinios.  (D.I. 32 at ¶ 5)

Presently before the court are several motions by defendant: a motion for

summary judgment of invalidity (D.I. 153) and non-infringement (D.I. 157), as well as a

motion to preclude the testimony of plaintiff's expert (D.I. 133).  The court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no

---

[1]Various defendants were previously dismissed, that is, PetSmart Inc. was
dismissed by stipulation on July 20, 2012 (D.I. 56), Express Inc. on March 12, 2013
(D.I. 76), and Victoria's Secret Stores LLC on May 16, 2013 (D.I. 84).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

2

supported motion for summary judgment," a factual dispute is genuine where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who

fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

### A. '527 Patent

The '527 patent discloses and claims methods for redeeming discount offers by

associating a machine-readable identification code, such as a barcode, with data

identifying items to be offered at a discount. The data is stored in a database in

memory, and the discount is provided for those items for which data is listed in the

database. (4:9-32) Independent claim 1 recites:

> A method for redeeming discount offers comprising:
> providing a circulation medium and providing said medium with indicia
> which includes a machine readable identification code;
> causing said medium to be distributed to potential users;
> associating said identification code with data identifying items which are to
> be offered at a discount provided as part of said medium and storing said
> data in memory in a data base so as to be addressable by said
> identification code;
> providing means for reading said identification code provided with said
> circulation medium;
> providing means associated with said code reading means for tabulating
> sales of items so that any discount corresponding to an item listed in said
> data is deducted from the price of the item in the tabulation; and
> using said reading means to identify said code provided with said medium

3

and using said means for tabulating items to obtain a price for the involved item and to cause a discount to be debited against the purchased item if the involved item is listed as part of said data identifying an item as qualifying for a discount as called for by the data base data defined by the identification code of the medium.

(9:7-30) Independent claim 17 recites:

A method of tracking customer purchasing habits comprising:
providing a circulation medium and providing said medium with indicia including a machine readable identification code means;
causing said medium to be distributed to potential users;
associating said identification code means with the addressee of the distributed circulation medium and with data identifying [at least one item] items to be offered at a discount;
providing means for reading said identification code means provided with said circulation medium;
using a code reading means to read the identification code means and to create a data file identified by the information in said identification code means;
providing means for tabulating items and for recording the items purchased by the bearer of the circulation medium and providing means for calculating the at least one discount on the item offered at discount by said identification code means; and
tabulating items purchased and storing a record of the tabulated items in said data file identified by the identification code means thereby enabling tracking of purchasing habits of individuals who receive and use the circulation medium.

(1:26-52, reexamination certificate)

## B. Invalidity

### 1. Indefiniteness

The court construed the means-plus-function claims as having the structure, "a

point of sale machine ('POS') linked to a main computer," and found that the

specification adequately disclosed an algorithm. Thus, the court does not reach

defendant's arguments that each of the means-plus-function limitations is indefinite for

lack of structure. *Cf. Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed.

4

Cir. 2007) ("If there is no structure in the specification corresponding to the means-plus-function limitation in the claims, the claim will be found invalid as indefinite."). Defendant's motion for summary judgment of invalidity is denied in this regard.

## 2. Anticipation

A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference. *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987). Defendant argues (without reference to expert testimony) that the coupons at issue in the case at bar are identical to those in the prior art reference, De Lapa. Therefore, defendant concludes that as plaintiff alleges infringement by these coupons, the coupons presented in De Lapa must anticipate. *See, e.g., Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (The principle of law is concisely embodied in the truism that: 'That which infringes if later anticipates if earlier.'"). Defendant's superficial analysis (of coupons not the claimed method) does not present evidence sufficient to meet its burden as movant on this issue. On the record before it, the court denies defendant's motion for summary judgment of invalidity.

## B. Infringement

Plaintiff accuses defendant's circulation flyers utilizing discount identifications ("standard coupons") and circulation flyers utilizing discount identifications that are configured for one-time use ("unique coupons").[2] (D.I. 162, ex. B at ¶ 12) Defendant

_____

[2]Defendant's circulation mediums utilizing negative price look up ("PLU") records do not infringe according to plaintiff's expert, Wasilew. (D.I. 162, ex. B at ¶ 12)

moves for non-infringement of the asserted claims.

### 1. Standard

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* Construction of the claims is a question of law subject to de novo review. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The trier of fact must then compare the properly construed claims with the accused infringing product. *See Markman*, 52 F.3d at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Direct infringement requires a party to perform each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007), *overruled on other grounds by* 692 F.3d 1301 (Fed. Cir. 2012). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting *Wahpeton*

6

*Canvas*, 870 F.2d at 1552) (internal quotations omitted). A product that does not

literally infringe a patent claim may still infringe under the doctrine of equivalents if the

differences between an individual limitation of the claimed invention and an element of

the accused product are insubstantial. *See Warner-Jenkinson Co. v. Hilton Davis*

*Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving

infringement and must meet its burden by a preponderance of the evidence. *See*

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988)

(citations omitted).

When an accused infringer moves for summary judgment of non-infringement,

such relief may be granted only if one or more limitations of the claim in question does

not read on an element of the accused product, either literally or under the doctrine of

equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005);

*see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002)

("Summary judgment of noninfringement is ... appropriate where the patent owner's

proof is deficient in meeting an essential part of the legal standard for infringement,

because such failure will render all other facts immaterial."). Thus, summary judgment

of non-infringement can only be granted if, after viewing the facts in the light most

favorable to the non-movant, there is no genuine issue as to whether the accused

product is covered by the claims (as construed by the court). *See Pitney Bowes, Inc. v.*

*Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

### 2. Analysis

Defendant's arguments for non-infringement are inextricably intertwined with its

7

request to exclude the opinions and testimony of plaintiff's expert, Wasilew. As such, the court will address the various bases for exclusion presented by defendant with the corresponding analyses of the issues on non-infringement. Rule 702 of the Federal Rules of Civil Procedure allows a qualified witness to testify in the form of an opinion if the witness' "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and if his/her testimony is the product of reliable principles and methods which have been reliably applied to the facts of the case.

While defendant points out Wasilew's lack of formal education, it does not respond to plaintiff's listing of Wasilew's 38 years of experience, including experience with systems such as those used by defendant, programming language experience, and work designing retail POS devices. Therefore, the court concludes that Wasilew has the requisite qualifications to testify as an expert in the case at bar. *Hammond v. International Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982) ("[U]nder Rule 702, an individual need possess no special academic credentials to serve as an expert witness . . . . '[P]ractical experience as well as academic training and credentials may be the basis of qualification [as an expert witness].'") (citation omitted)).

### a. Literal infringement of the "associating" limitation

In discussing whether defendant's accused system meets the third limitation of claim 1, "associating said identification code with data identifying items which are to be offered at a discount,"[3] Wasilew examined defendant's coupons and observed the POS

---

[3]Wasilew stated that "[t]he Court has not as of yet construed the terms of the claims. Therefore, unless a claim term is specifically defined in the '527 patent and/or

system processing such coupons.  Wasilew opined that

> the identification code (i.e., barcode of the Standard Coupon) is
> associated with a discount id, which discount id is used by the POS
> system to refer to an entry in the discount file, which entry in the discount
> file comprises an inclusion/exclusion id, which inclusion/exclusion id is
> in-turn used by the POS system to refer to an entry in the
> inclusion/exclusion file, which entry in the inclusion/exclusion file defines
> the categories (or other hierarchy of) items that are **ineligible** to receive
> the discount offered as part of the Standard Coupon. . . . [T]he
> identification code is associated with data (e.g., the data in the discount
> file and the inclusion/exclusion file), which data **identifies by negative
> implication** the items to be offered at a discount as part of the coupon.
> Specifically, the data in the examples above identifies items that are
> **ineligible** to receive discounts per the terms of the Standard Coupon, and
> in so doing, necessarily and automatically identifies all the remaining
> items sold by Ulta as being eligible to receive the discount.

(D.I. 162, ex. B at ¶ 21) (emphasis added)  Wasilew explained that defendant's POS

system processes the unique coupons "under the same methodology."  (*Id.* at ¶¶ 36-37)

Wasilew concluded that "the data does identify by negative implication the items to be

offered at a discount, and as such, the accused method literally meets the relevant

portion of the third element of claim 1."  Plaintiff argues that these opinions are

consistent with the plain and ordinary meaning of the term "identifying," which it opines

includes both positive and negative identification.

The court declines to evaluate the testimony based on plaintiff's construction,

i.e., whether the plain and ordinary meaning of "identify" includes the "negative

implication."  Instead, the court frames its decision based on the issued claim

---

its prosecution or reexamination history to have a meaning that is different from its
ordinary meaning, I have construed the claim terms in conformity with the meanings of
these terms as understood at the time of the invention by those of ordinary skill in the
art."  (D.I. 162, ex. B at 2-3)  The court will not exclude Wasilew's opinions based on his
application of plain and ordinary meaning.

construction, "each identification code refers to a data file, which file lists more than one discount eligible item. This does not include a discount applicable to an entire department or store, which does not enumerate specific items." Such construction does not permit the argument made by Wasilew, as it requires that the identification code point to a data file in memory, which file lists the specific items to be discounted. While plaintiff argues that, to the extent any of Wasilew's testimony is inconsistent, cross-examination is the appropriate remedy, this does not resolve the issue at bar, where an expert's testimony is incompatible with the court's construction. Defendant's motion to exclude such testimony is granted.

Moreover, based on the construction of this limitation, the analyzed coupons do not literally infringe as the barcode on the coupon does not identify a file which contains the specific items offered at a discount. Instead, as Wasilew explained, the accused coupons identify files which contain "items that are ineligible to receive the discount." Therefore, defendant's motion for summary judgment of non-infringement is granted in this regard.[4]

Wasilew described the accused coupons as identifying "categories (or other hierarchy of) items that are ineligible to receive the discount offered as part of the

_____

[4]As to "positive identification," plaintiff points to Wasilew's report, wherein representations of the inclusion/exclusion files show groups of items associated with a discount. Wasilew concludes that "the inclusion/exclusion file entry positively identifies the items to be offered at a discount as part of the circulation medium." (D.I. 162, ex. B at ¶ 23) However, Wasilew does not show application of such file entries to coupon use as required by the method claims of the patent at issue. To the extent plaintiff can identify coupons which allow the claimed method to be practiced, i.e., coupons utilizing the disclosed inclusion/exclusion files wherein discounted items are identified in such files, plaintiff may make such a proffer to the court at the pretrial conference.

10

Standard Coupon." (D.I. 162, ex. B at ¶ 21; ex. D at 101:1-102:3, 147:9-148:2,

149:1-7, 149:18-150:8) Wasilew further opined that, to the extent defendant's

> discounts reference categories and departments, et cetera, and not
> individual items . . . each category and department comprises items . . .
> and Ulta's grouping of items in the system into broader classes does not
> change the fact that the POS system is ultimately able to connect the
> information associated with a discount eligible or a discount ineligible item
> with the information associated with the discount.

(D.I. 162, ex. B at ¶ 25) Wasilew concluded that, "[i]rrespective of whether the various

items are categorized into broader classes, the accused method allows customers to

use the circulation mediums to purchase the discountable items at discounted prices."

The court disagrees with this analysis. The limitation at issue, as construed, requires

the identification of specific items to which discounts apply, not categories or

hierarchies. Therefore, defendant's motion for summary judgment of non-infringement

is granted on this basis as well.

### b. The means-plus-function limitations

As to the means-plus-function limitations, defendant argues that Wasilew did not

identify the corresponding structure in the specification used for his analysis. Instead,

defendant alleges Wasilew simply compared the claimed function of "tabulating" to the

function of defendant's system. Wasilew testified that, while defendant did not disclose

the algorithms used by defendant's system, "there aren't too many algorithms that can

be used, so it's pretty obvious. We did also test the function, to ascertain if it meets the

needs." (D.I. 134, ex. C at 86:1-6) In rebutting indefiniteness, Wasilew explained that

"a person of ordinary skill in the art would need very little in the way of disclosure to

understand and implement an algorithm for either tabulating sales or calculating

11

discounts. Simple software commands that perform basic mathematic operations are well within the knowledge of the person of ordinary skill." (D.I. 159 at ¶ 4) Wasilew also testified that "[e]very point of sales system, every device, electronic, in fact even mechanical ones, include" a means for tabulating sales and "every point of sale system known carries that function." (D.I. 134, ex. C at 45:14-18, 77:8-13)

To establish literal infringement of a means-plus-function limitation, plaintiff must show "that the relevant structure in the accused device perform[s] the identical function recited in the claim and [is] identical or equivalent to the corresponding structure in the specification." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). This

> requires a determination of whether the "way" the assertedly substitute structure performs the claimed function, and the "result" of that performance, is substantially different from the "way" the claimed function is performed by the "corresponding structure, acts, or materials described in the specification," or its "result." Structural equivalence under § 112, ¶ 6 is met only if the differences are insubstantial; that is, if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification.

*Id.* at 1267 (citations omitted). Plaintiff's expert offered opinions based on its construction of the limitation, a POS machine (not requiring an algorithm). The court construed the structure of the "tabulating" and "calculating" limitations as "a point of sale machine ('POS') linked to a main computer," with an algorithm disclosed in the specification. Therefore, the court will not exclude the related testimony.[5] Defendant's

---

[5]The court recognizes that the parties' experts may need to supplement their opinions to comport with the court's construction. The parties may address this issue at the pretrial conference.

motion for summary judgment on this issue, based on the exclusion of testimony, is denied.

### c. Literal infringement of the barcode limitations

Certain of defendant's coupons use a barcode to identify the addressee and a separate barcode to identify data. (D.I. 162 at fig. 25(a)) The language of claim 12 (and dependant claim 15) requires that the identification code of claim 1 (which identified the discounted items) also identify the addressee. Defendant's coupons, which use two separate barcodes, do not meet this requirement;[6] therefore, the use of such coupons does not literally infringe these asserted claims.

Another subset of defendant's coupons includes a single barcode (D.I. 162 at figs. 1-4) which identifies data, but not information about the customer/addressee. Without such information about the addressee, the use of such coupons does not literally infringe claims 12, 15, and 17, which each require barcoded addressee information in addition to discount data.

### d. Infringement by the doctrine of equivalents

As to the doctrine of equivalents, defendant argues that plaintiff's disclosures and opinions are untimely as plaintiff was required to provide its contentions during fact discovery. Plaintiff responds that Wasilew's initial expert report contained his opinions on the doctrine of equivalents and such opinions were timely supplemented after the inspection of defendant's system. Defendant's motion to exclude Wasilew's opinions on this basis is denied.

_____

[6]Claim 17, as construed,  allows the use of two barcodes.

13

Wasilew properly described that "infringement under the doctrine of equivalents

requires that the accused method embody each limitation of the claim or its equivalent,

and that an element in the accused method is equivalent to a claim limitation if the

differences between the two are insubstantial to one of ordinary skill in the art." (D.I.

162, ex. B at 4) Wasilew explained:

> [I]dentification by the data of items that are ineligible to be discounted per
> the terms of the Standard Coupon is, under the doctrine of equivalents,
> equivalent to the identification by the data of items that are eligible to be
> offered at a discount. People of skill in the art will consider the difference
> between the two to be insubstantial. Indeed, as discussed below, Ulta
> has the ability to cause the data to positively identify those items that are
> to be offered at a discount per the terms of the Standard Coupon, and
> Ulta typically chooses to identify instead the excluded items simply
> because it is more convenient to do so (i.e., it is easier for Ulta to cause
> the data to identify the handful of ineligible items as opposed to identifying
> the many thousands of eligible items).

(D.I. 162, ex. B at ¶ 22) Moreover, "the accused method meets the relevant portion of

element 3 . . . under the doctrine of equivalents, when it allows for redemption of a

Standard Coupon utilizing the 'exclude rule' or 'include rule' apply type in the

inclusion/exclusion file." (D.I. 162, ex. B at ¶ 24) After conducting an inspection of

defendant's system, Wasilew's supplemental report stated that his "inspection and

review of the inspection documents confirmed that the accused method infringes each

of the asserted claims, either literally, or under the doctrine of equivalents because

people of skill in the art would find the differences between the accused and claimed

methods to be insubstantial." (D.I. 168, ex. 8 at ¶ 2)

Wasilew testified that he was "looking at the result to see whether it was the

same whether items were included or excluded," even though "the way in which those

results were reached were different . . . ." (D.I. 134, ex. C at 92:23-93:6) He concluded

14

that "we have two different methods of determining the exact same set of items. And so, yes, I was looking at the two different methods of determining that, but the results are identical." (D.I. 134, ex. C at 92:10-14) Wasilew "understood that the method of achieving the result is different, but the result is identical." (D.I. 134, ex. C at 121:11-13).

"Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" *Voda v. Cordis Corp.*, 536 F.3d at 1326 (citing *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)). The Federal Circuit has generally "refused to apply the doctrine [of equivalents] . . . where the accused device contained the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338, 1344-45 (2006). "This makes sense; two elements likely are not insubstantially different when they are polar opposites." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (2013). Plaintiff argues that identification of items ineligible for a discount is the equivalent of identification of items eligible for a discount, because the same result is achieved. However, the '527 patent claims a "method for redeeming discount offers," not a coupon. The asserted claims specifically require identifying "discounted items," and plaintiff argued as much in prosecution; therefore, plaintiff cannot now recover the opposite through use of the doctrine of equivalents. *See Planet Bingo*, 472 F.3d at 1344 ("Here, the patents contain a distinct limitation, which was part of the bargain when the patent issued. This court cannot overlook that limitation or expand the doctrine of equivalents beyond its purpose

15

to allow recapture of subject matter excluded by a deliberate and foreseeable claim drafting decision."). Defendant's motion for non-infringement under the doctrine of equivalents is granted. [7,8]

## V. CONCLUSION

For the foregoing reasons, the court denies defendant's motion for summary judgment of invalidity (D.I. 153); grants in part and denies in part defendant's motion to exclude (D.I. 133); and grants defendant's motion for summary judgment of non-infringement (D.I. 157). An appropriate order shall issue.

---

[7]The court does not reach defendant's argument that Wasilew's testimony is insufficient for a proper doctrine of equivalent analysis. Defendant's motion to exclude is denied as moot in this regard.

[8]In light of the above analysis, the court does not reach the issue of whether defendant's coupons are store-wide coupons and, thus, barred by prosecution history estoppel. As discussed in the claim construction order, during prosecution, plaintiff disclaimed coupons which offered discounts off entire departments or stores. (D.I. 129, ex. A at MI569); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (2008) (citing *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1357 (Fed. Cir. 2006)) (prosecution history estoppel occurs when an applicant surrenders "claim scope through argument to the patent examiner ('argument-based estoppel')").

16